**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **MAXIE MCNABB,** | ) | |
| | ) | |
| **Plaintiff** | ) | **CIVIL ACTION NO:** |
| | ) | **2:06-0664-MHT** |
| **v.** | ) | |
| | ) | |
| **SANDERS LEAD COMPANY, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

COMES NOW the Plaintiff in the above-styled matter and submits the following brief in response to the Defendant's Motion for Summary Judgment.

## I.    INTRODUCTION

The Plaintiff, Maxie McNabb (hereinafter "Plaintiff" or "McNabb"), filed this lawsuit alleging that the Defendant refused to rehire him after a work force reduction because of his age and refused his application a second time in retaliation for his filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). At the time of these applications, McNabb was fifty-four (54) years old. The Defendant, Sanders Lead Company, Inc. (hereinafter "Defendant or Sanders Lead") denies the Plaintiff's allegations, however, the Defendant has moved for Summary Judgment on claims of discriminatory discharge and retaliation.

The Plaintiff is not claiming discriminatory discharge in this matter and would submit that the Defendant has waived its right to contest Plaintiff's failure to rehire claim. The Plaintiff's claims in this case are discrimination on the basis of age in hiring and retaliation. (*See*, Doc. #1, Pl.'s Compl. ¶6-21).

## II.    FACTUAL ALLEGATIONS

### A.    Plaintiff Begins Work at Sanders Lead

McNabb was born on August 30, 1951 in Troy, Alabama. (Pl.'s Ex. 1, McNabb Decl. ¶1). McNabb began working for Sanders Lead in September 1992 as a Operator in the Casting/Alloy Department. (Pl.'s Ex. 1, McNabb Decl. ¶1). Sanders Lead Company, Incorporated is a lead acid battery recycle operation and large scale secondary lead smelting operation located in Troy, Alabama. (Pl.'s Ex. 1, McNabb Decl. ¶2). It employs approximately four hundred employees. (Pl.'s Ex. 2, Business Report). The following people manage the day to day operations in the Casting/Alloy Department: Bart Sanders, VP, Operations; Edgar Fannin, Department Manager Casting and Alloy Department; Leon Bennett, Casting and Alloy Supervisor, and Sam Kitchens, Personnel Manager. (Pl.'s Ex. 1, McNabb Decl. ¶2). McNabb's direct supervisor was Leon Bennett. (Id.).

A Casting/Alloy Operator prepares and delivers molten lead or lead alloy to a

prepared mold to form a solid ingot possessing specific properties.[1] (Pl.'s Ex. 3, Casting/Alloy Job Description). To be able to work in Casting/Alloy, one must submit to a medical examination and laboratory tests to determine if the employee has some medical condition that would place them at an increased risk of impairment to health from exposure to lead and/or arsenic.[2]

In October 1992, McNabb resigned his employment for a short period to enter a drug and alcohol dependency program. (Pl's Ex. 1, McNabb Decl. ¶4). After successfully completing this program, McNabb reapplied with Sanders Lead and was rehired into the same position in Casting/Alloy in November 1992. (Id.). After returning to Sanders Lead in November 1992, except for a short stint, McNabb worked mainly as a Casting/Alloy Operator. (Id.). McNabb had no other breaks in employment until his lay-off in January 2006. (Pl.'s Ex. 1, McNabb Decl. ¶4).

## B.    McNabb is Terminated After Fourteen Years With Sanders Lead

Sometime in October or November 2005, Sanders Lead announced that it was

---

[1]This work is extremely dangerous and difficult as the employee is required to be able to lift between 75-100 lbs and work in temperatures that sometimes reach 120 degrees. Moreover, because of the fumes Casting/Alloy employees must wear respirators and are required to take annual respirator fit tests, pulmonary function tests, hearing tests, and blood lead levels tests.

[2]McNabb last took such examinations on April 21, 2005 and October 12, 2005 and was deemed medically able to work in the Casting/Alloy Department. (Pl.'s Ex. 4, Physical Exam Reports).

anticipating going through a company reorganization and work force reduction. (Pl.'s Ex. 1, McNabb Decl. ¶5). At that time no one discussed with McNabb the prospects of him being included in any reduction in force or lay-off, nor was he ever notified that his production had fallen off. (Pl.'s Ex. 1, McNabb Decl. ¶5). Moreover, McNabb had just received a raise in September 2005 and had received a satisfactory job performance ratings for the year 2005, which was signed off on by his direct supervisor, Leon Bennet, and department head, Edgar Fannin. (Pl.'s Ex. 1, McNabb Decl. ¶5; Pl.'s Ex. 5,Annual Employee Evaluations).

On or about January 5, 2006, Sanders Lead informed McNabb that he had been selected to be laid-off due to a reduction in force and a desire by Sanders Lead to reduce expenses. (Pl.'s Ex. 1, McNabb Decl. ¶6). Before McNabb filed the instant lawsuit, these were the only reasons he was given for being laid off and at no time prior to the filing of this lawsuit was he notified that he was being laid-off because of absenteeism, tardiness, low production, or discipline problems.[3] Indeed, McNabb

---

[3]The following documents which were produced by the Defendant support this allegation: Defendant's change in employment status form which gives reduction in force as the only reason for separation; (Pl.'s Ex. 6, Sanders Letters), Defendant's response to Unemployment Compensation Division Form which states the reason for separation as reorganization of company and reduction in force; (Pl.'s Ex. 7, Notice of Claim and Request for Separation Information), Defendant's statement of position to the EEOC which states that McNabb was, "laid-off in January 2006 as part of a company wide reduction in force which was done to reduce Company expenses; (Pl.'s Ex. 8, EEOC Statement of Position).

had no disciplines in his work file for the preceding seven-months leading up to his being laid-off and, as mentioned above, he had been rated as a satisfactory employee for the year of 2005. (*See,* Def.'s Br. at 5). Moreover, on the "Employment Recommendations" section of Sanders Lead's "Change of Employee Status" form, McNabb's separation is termed a lay-off and the reason given is company reorganization and reduction in work force. (Pl.'s Ex. 9, Change of Employment Status). Furthermore, McNabb received the highest marks attainable on this form for attendance, attitude, job knowledge, quality of work, production rate and ability to get along with fellow workers. (Id.).

Upon being informed that he was being laid off, McNabb expressed to Mr. Fannin his desire to keep working, however, Fannin stated that McNabb should go ahead and accept it. (Pl.'s Ex. 1, McNabb Decl. ¶6). Three other employees were laid off with McNabb: Kenneth Bristow, Edward Meadows, and Jacquez C. Williams. (Pl.'s Ex. 8, EEOC Position Statement). These employees were less experienced than McNabb and did not possess his length of tenure in the Casting/Alloy Department. (Pl.'s Ex. 1, McNabb Decl. ¶6).

After being laid-off, McNabb applied for unemployment compensation which he received. (Pl.'s Ex. 1, McNabb Decl. ¶7; Pl.'s Ex. 7). On the State of Alabama Unemployment Compensation Division "Notice of Claim and Request for

Separation Information" form  Sanders Lead reiterated what it had stated to McNabb as the reason for his separation, which was that the company was going through a reorganization and reduction in force.  (Pl.'s Ex. 7).  This was the only reason ever given by Sanders Lead to the State of Alabama for McNabb's separation.

On or about March 7, 2006, Sanders Lead placed a help wanted advertisement in a local Troy newspaper, the Troy Messenger.  (Pl.'s Ex. 10, Job Advertisement).  This advertisement stated the following: "Sanders Lead Co. is taking applications for all shifts in the Furnace Dept. and Casting & Alloy Dept.  Applicants must be able to lift 75-100 lbs & climb some heights.  BC/BC insurance & 401-k.  Starting pay $8.  Apply at Sanders Lead Co. Personnel Dept.  334-566-1563."  (Pl.'s Ex. 10, Job Advertisement).  This advertisement instructed applicants  to apply by calling the listed number.   (Id.).  During his career, McNabb had worked in both of these departments, although the bulk of his experience was as a  Casting/Alloy Operator. ((Pl.'s Ex. 1, McNabb Decl. ¶8).

Upon reading this advertisement, McNabb immediately called Edgar Fannin and requested his old job back.  (Pl.'s Ex. 1, McNabb Decl. ¶9).  During this call McNabb informed Mr. Fannin that he had seen Sanders Lead's advertisement regarding openings in his old department.  (Id.).  Mr. Fannin's reply was to tell McNabb that the advertisement was not accurate and that Sanders Lead was not

hiring. (Id.). Near the end of the conversation, McNabb reiterated his desire to return to work.[4] (Id.). It had been past practice that if Mr. Fannin knew you wanted to work he would hire you on the spot and then have you fill out a formal application later. (Pl.'s Ex. 1, McNabb Decl. ¶6). McNabb's interest was also spurred by the fact that around this same time he had spoken with Ed Meadows who had been laid-off with him and had recently been re-hired. (Pl.'s Ex. 1, McNabb Decl. ¶6). Meadows was born on November 26, 1981 and was at the time approximately twenty-five years old. (Pl.'s Ex. 11, Employment Eligibility Verification).

Sanders Lead advertised for workers to fill positions in its Casting/Alloy Department all through the month of March 2006.[5] However, McNabb was never contacted by Mr. Fannin or any other Sanders Lead official after he had made it known that he was interested in re-employment. (Pl.'s Ex. 1, McNabb Decl. ¶9-10). With full knowledge of McNabb's interest in work Sanders Lead hired the following

---

[4]McNabb's testimony directly disputes Fannin's contention that he was unaware that McNabb had ever sought re-employment. (*See*, Fannin Aff. at ¶10). Moreover, as an interested party, Fannin's Affidavit cannot be relied upon for purposes of summary judgment except to the extent that it contains admissions against interest. Thus, Sanders Lead's contention that it was never put on notice of McNabb's interest in re-employment until May 24, 2006 is a disputed fact and precludes summary judgment.

[5]Sanders Lead placed help wanted ads in approximately three local newspapers. (Pl.'s Ex. 12, Job Advertisements).

significantly younger employees into the Casting/Alloy Department:

| Employee Name | Department | Date of Birth | Date of Hire |
|---|---|---|---|
| Sandy A. Boswell | Casting/Alloy | 12/29/1984 | 4/21/2006 |
| Robert E. Brundidge, Jr. | Casting/Alloy | 04/27/1977 | 05/05/2006 |
| Cornelius Clark | Casting/Alloy | 06/23/1985 | 04/05/2006 |
| Demond T. Collins | Casting/Alloy | 03/06/1974 | 03/30/2006 |
| Alenda E. Dixon | Casting/Alloy | 11/04/1969 | 04/11/2006 |
| Randolph E. Harley, II | Casting/Alloy | 11/03/1986 | 04/27/2006 |
| Kaunta K. McGrew | Casting/Alloy | 02/07/1977 | 03/31/2006 |
| Darrian Q. McNabb | Casting/Alloy | 08/06/1986 | 04/25/2006 |
| Darius L. Sims | Casting/Alloy | 02/09/1987 | 04/15/2006 |
| Frederick T. Snell | Casting/Alloy | 11/05/1979 | 03/10/2006[6] |

On March 31, 2006, McNabb filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that he had been discriminated against on the basis of his age (54) in violation of the Age Discrimination in Employment Act. (Pl.'s Ex. 14, EEOC Charge). On or about April 5, 2006, a Notice of Charge of Discrimination was mailed to Bart Sanders giving

---

[6]Employee roster produced by Sanders Lead in response to Plaintiff's First Interrogatories and Request for Production of Documents. (Pl.'s Ex. 13, Sanders Lead Employment Roster).

Sanders Lead until May 5, 2006 to provide a statement of position regarding McNabb's allegations. (Pl.'s Ex. 15, Notice of Charge of Discrimination). Sanders Lead provided such a statement on or about May 4, 2006. (Pl.'s Ex. 8, EEOC Statement of Position). In its statement of position, Sanders Lead stated that McNabb was laid-off as part of a "company wide reduction in force which was done to reduce Company expenses." (Id.). Absent from this statement of position was any claim that McNabb was let go for any other reason(s).

On May 24, 2006, McNabb and Joe Owens visited Sanders Lead to pick up job applications as it was common knowledge that Sanders Lead was continuing to hire employees for the Casting/Alloy Department. (Pl.'s Ex. 1, McNabb Decl. ¶13; Pl.'s Ex. 16, McNabb Aff.). McNabb and Owens first met with Anne Baker, a secretary, who gave them applications to fill out and instructed them to return them that day after lunch.(Pl.'s Ex. 1, McNabb Decl. ¶13-14). McNabb and Owens returned that same day and submitted their applications to Sanders Lead. (Pl.'s Ex. 1, McNabb Decl. ¶13-14).

Upon returning, McNabb spoke directly with Personnel Manager Sam Kitchens. (Pl.'s Ex. 1, McNabb Decl. ¶14). Mr. Kitchens informed McNabb that there were openings in the Casting/Alloy Department and that he would get back to

him regarding within a couple of days regarding his application.[7]  (Id.).  After this

meeting, McNabb never heard from Mr. Kitchens and Sanders Lead continued to hire

younger less qualified employees into the Casting/Alloy Department.  (Pl.'s Ex. 13,

Sanders Lead Employment Roster).   The following younger employees were hired

into the department after McNabb's second application:

| **Employee Name** | **Department** | **Date of Birth** | **Date of Hire** |
|---|---|---|---|
| Matthew D. Alexander | Casting/Alloy | 09/07/1978 | 06/16/2006 |
| Robert D. Boykin | Casting/Alloy | 11/08/1984 | 10/24/2006 |
| James B. Carlisle | Casting/Alloy | 07/20/1972 | 11/17/2006 |
| Christopher Chambers | Casting/Alloy | 01/01/1979 | 09/22/2006 |
| Tony L. Gamble, Jr. | Casting/Alloy | 11/23/1980 | 11/06/2006 |
| Kenyata Gilbert | Casting/Alloy | 08/09/1986 | 05/26/2006 |
| Tony D. Graham | Casting/Alloy | 08/25/1984 | 08/11/2006 |
| Ledon A. Grice | Casting/Alloy | 02/29/1980 | 10/20/2006 |
| Zane B. Hall | Casting/Alloy | 11/05/1986 | 10/20/2006 |
| Jonas R. Hannah | Casting/Alloy | 03/29/1976 | 10/20/2006 |

---

[7]McNabb's testimony directly disputes Kitchens's testimony which states that there were no openings in the department at the time of McNabb's second application for employment. (Compare Kitchens's Aff. at 9 with McNabb's Decl. at ¶14). Again, the inference the Court must credit at this stage is the one most favorable to the Plaintiff.

| | | | |
|---|---|---|---|
| Lydell Harris | Casting/Alloy | 08/08/1976 | 09/01/2006 |
| Jerrell T. Jackson | Casting/Alloy | 11/29/1968 | 06/09/2006 |
| Jeremiah Jones | Casting/Alloy | 01/07/1967 | 09/01/2006 |
| Trenton L. Jones | Casting/Alloy | 04/02/1974 | 09/05/2006 |
| Joseph D. Lightfoot | Casting/Alloy | 07/20/1980 | 09/26/2006 |
| Desmund T. McNabb | Casting/Alloy | 05/08/1988 | 08/04/2006 |
| Eddie R. Meadows, Jr. | Casting/Alloy | 01/06/1984 | 07/27/2006 |
| Terrance T. Pennington | Casting/Alloy | 04/23/1988 | 06/09/2006 |
| Manach Pierre | Casting/Alloy | 01/12/1975 | 10/06/2006 |
| Adrian S. Price | Casting/Alloy | 01/28/1977 | 10/27/2006 |
| Elijah R. Rouse | Casting/Alloy | 05/23/1975 | 11/18/2006 |
| Felix J. Solomon | Casting/Alloy | 08/09/1983 | 06/02/2006 |
| Ricco L. Swanson | Casting/Alloy | 05/28/1982 | 07/22/2006 |
| Mitchell T. Truitt | Casting/Alloy | 12/12/1976 | 06/23/2006 |
| Astin R. Williams | Casting/Alloy | 08/27/1981 | 07/11/2006 |
| Nichoulas O. Williams | Casting/Alloy | 06/24/1985 | 06/12/2006[8] |

---

[8]Seven of these employees were hired within four weeks of McNabb's application. Indeed, Kenyata Gilbert, a nineteen-year old at the time, was hired on May 26, 2006, two days after McNabb submitted his application. This is in direct contradiction to Kitchens's testimony that there were no openings when McNabb applied the second time and as such precludes summary judgment.

The Defendant also advertised for applicants for a Welder/Maintenance Man position for which McNabb was qualified.  (Pl.'s Ex. 12, Job Advertisements).  However, even though the Defendant was aware of the Plaintiff's interest in securing a position with, he was not considered for this job either.[9]  On July 13, 2006, McNabb filed a second charge of discrimination with the EEOC alleging that the company retaliated against him for opposing discriminatory practices.  (Pl.'s Ex. 17, EEOC Charge).  McNabb filed the instant action in federal court on July 25, 2006.  (*See,* Doc. #1, Compl.).

## III.  <u>ARGUMENT</u>

### A.    **Summary Judgment Standard**

In *Hinson v. Clinch County*, 231 F.3d 821 (11th Cir. 2000), the Eleventh Circuit set forth the applicable standard of review  for summary judgment.

> "A court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weight the evidence." * * * "[T]he court should give credence to the 'evidence favoring the non-movant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'"  *Id.* In other words, we must consider the entire record, but "disregard all evidence favorable to the moving party that the jury is not required to believe."

*Id.* (citations omitted; quotations from *Reeves v. Sanderson Plumbing*, 530 U.S. 133

---

[9]McNabb would have been interested in this position if he had known about it.

(2000).[10]

### B.    Plaintiff Has Established A Prima Facie Case Of Age Discrimination

The Defendant does not address the Plaintiff's discriminatory failure to hire claim in its brief, therefore, it has conceded any argument as to whether this claim should proceed to trial because "the onus is upon the parties to formulate arguments" to support their positions at summary judgment.  *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995).  Even if this Court were to allow the Defendant an opportunity to address the discriminatory failure to hire claim,  there is no doubt that the Plaintiff can establish his prima facie case of age discrimination.

### 1.    The Prima Facie Case

To establish a prima facie case of discriminatory failure to hire under the

---

[10] *See also Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 574 (5th Cir. 2003) (Courts  "must 'disregard all evidence favorable to the moving party that the jury is not required to believe.'"); *Sonnentheil v. Christian Moerlein Brewing Co.*, 172 U.S. 401, 408 (1899) ("[T]he mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact."); *Sartor v. Arkansas Gas Corp.*, 321 U.S. 620, 624-25 (1941) (discounting the value of affidavits of interested witnesses); *Hibiscus Assoc. Ltd. v. Board of Trustees,* 50 F.3d 908, 921 (11th Cir. 1995) ( "court should not generally grant a directed verdict based solely on the unfavorable testimony of an interested witness, even if this evidence is uncontroverted"); *J&H Auto Trim Co. v. Bellefonte Ins. Co.,* 677 F.2d 1365, 1369 (11th Cir. 1982) ( "as an interested witness, it is for the jury to evaluate the credibility of his testimony");  *Falk v. C.I.R.,* 332 F.2d 922, 927 (5th Cir. 1964) ("words . . .spoken by interested parties [is] a factor which any trier ordinarily can take into account").

federal anti-age discrimination statute, a plaintiff must show that (i) he is a member of the protected group of persons between the ages of forty and seventy; (ii) he was qualified for and applied for a position the employer was trying to fill; (iii) he was denied the position; and (iv) others who were not members of the protected class (or who were substantially younger than plaintiff) were hired, or the employer continued to seek applicants with the plaintiff's qualifications. *Underwood v. Perry County Com'n,* 431 F.3d 788, 794 (11th Cir.2005); *Vessels v. Atlanta Independent School System,* 408 F.3d 763, 768 (11th Cir.2005);*Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1359 (11th Cir. 1999).

### a.    Plaintiff is a Member of a Protected Group

The evidence satisfies each of the elements of a *prima facie* case.  First, both parties agree that McNabb was a member of the protected group because it is undisputed that he was fifty-four at the time of the events that form the basis of the instant lawsuit.

### b.    Plaintiff was Qualified for the Position and Applied for it.

Second, the Plaintiff was qualified for and applied for positions that the Defendant was trying to fill.  Plaintiff's evidence that he was qualified for the Casting/Alloy Department is overwhelming: he had worked as a Casting/Alloy

Operator for approximately fourteen years[11]; he had been deemed medically able to do his job by the Defendant's own doctors; on its own employment separation form, dated January 5, 2006, the Defendant rated Plaintiff eligible for rehire and he received the highest marks attainable in the following areas: attendance, attitude, job knowledge, quality of work, production rate, and ability to get along with fellow workers[12]; the Defendant told Plaintiff, the EEOC, and the State of Alabama that the Plaintiff had been laid off because of a reduction in force and a company reorganization to save expenses; and he had received a raise in September 2005 and satisfactory job performance ratings for that same year.[13] Furthermore, the Defendant concedes under oath that Plaintiff was qualified in its response to Plaintiff's Interrogatory No. 3:

> Q.    "Do you alleged or contend that Maxie McNabb was
>        unqualified to work in the Furnace Department and/or the
>        Casting & Alloy Department? If so, please state each and
>        every reason for your allegation."

---

[11]As this Court has previously held, qualification for a particular job is assumed when an employee has been in position for a significant period of time. *Israel v. Sonic-Montgomery FLM, Inc.,* 231 F.Supp. 1156, 1160 (M.D. Ala. 2002)(quoting *Crapp v. City of Miami, Beach,* 242 F.3d 1017, 1020 (11th Cir. 2001)).

[12]See "Change of Employee Status" form "Employment Recommendations" section. (Pl.'s Ex. 9, Change of Employee Status form).

[13]See, Pl.'s Ex.1, McNabb Decl. ¶5 and Pl.'s Ex. 5, 2005 Performance Evaluations.

\*\*\*

A. "As far as Defendant knows, Plaintiff was physically able to perform his job duties." (Pl.'s Ex. 18, Pl. First Interrogatories and Request for Production of Documents at pg. 7 and Pl.'s Ex. 19, Defendant's Interrogatory Responses at pg. 2).

Defendant never alleged to any organization or individual that Plaintiff was unqualified for the position until it filed its Motion for Summary Judgment.

Likewise, it is equally undisputed that Plaintiff applied for a position in the Casting/Alloy Department. After seeing an advertisement seeking workers for the Defendant's Casting/Alloy Department in the Troy Messenge on March 7, 2007, Plaintiff called Edgar Fannin and requested he be rehired into his old position as a Casting/Alloy Operator. Plaintiff's applying in this manner is on all fours with the manner of application set forth by the Defendant in the aforementioned advertisement, which gave a number for prospective applicants interested in employment to call. Nowhere on this advertisement did it state that prospective applicants need fill out a formal application before being hired. Moreover, it was the Defendant's practice to let Fannin hire an applicant, who expressed an interest to work, on the spot and then have he or she fill out a formal application later. (Pl.'s Ex. 1, Pl.'s Decl. ¶9). Therefore, it must be held that Plaintiff satisfies this prong of his *prima facie* case.

### c.  Plaintiff was Denied the Position

It is undisputed that Plaintiff was denied the position as he was never rehired by the Defendant. Not only was Plaintiff not rehired, he was also given false information regarding the availability of positions by Fannin. Plaintiff testifies that Fannin told him that there were no openings in his old department and that the advertisement was not accurate, however, this contention is belied by the fact that at least ten significantly younger employees were hired into the Casting/Alloy Department after Plaintiff's first request to be put back to work. (See, Pl.'s Br. at pgs. 7-8, *supra*). Plaintiff satisfies this prong of his *prima facie* case.

### d.  The Defendant Hired Substantially Younger Employees and Continued to Seek Other Applicants Who Were Equally or Less Qualified than the Plaintiff

As mentioned in *Section II(B)* of this brief, the Defendant hired at least ten significantly younger employees while rejecting the Plaintiff. Additionally, after rejecting the Plaintiff's application, the Defendant continued to advertise for applicants for the Casting/Alloy Department by running advertisements in at least three newspapers in the region. Plaintiff has now made out his *prima facie* case.

After the Plaintiff establishes his *prima facie* case of age discrimination, the burden now shifts to the Defendant to articulate a reason for the adverse employment action. In this particular case the Defendant has articulated two reasons for **all** of its

17

decisions regarding the Plaintiff: (1) the Plaintiff was not qualified for employment due to discipline problems, poor work ethic and unsatisfactory production; and (2) it was not hiring people in the casting and alloy department and therefore the Plaintiff was not replaced by anyone outside of the protected group. (See Def.'s Br. at 12, 14, 16-18). Once the Defendant articulates a legitimate reason for the adverse employment action, the burden shifts back to the Plaintiff to establish that the Defendant's articulated reason is merely a pretext for age discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-805 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981).

### C. Defendant's Articulated Reasons For Plaintiff's Non-Selection Is Disputed And May Be Found To Be False And Pretextual At Trial

Defendant's articulated reasons for its actions toward the Plaintiff are directly disputed by the Plaintiff's testimony, by the Defendant's own testimony given under oath, and documents provided by the Defendant in response to Plaintiff's Request for Production of Documents. In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-154 (2000), the Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148. Summary judgment is improper where material facts and inferences are in conflict, as here.

18

## 1.    Shifting Reasons for Not Hiring the Plaintiff

The fact that an employer has offered shifting or inconsistent *post hoc* explanations for its employment decisions is probative of pretext.  *Bechtel Const. Co. v. Secretary of Labor,* 50 F.3d 926, 935 (11th Cir. 1995) (shifting explanations for it actions evidence of pretext); *Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 526-527 (11th Cir. 1994) (identification of inconsistencies in the defendant's testimony is evidence of pretext); *E.E.O.C. v. Sears Roebuck & Co.,* 243 F.3d 846, 852-53 (4th Cir. 2001); *Dennis v. Columbia Colleton Medical Center, Inc.,* 290 F.3d 639, 647 (4th Cir. 2002). Moreover, inconsistent reasons for taking a particular employment action allows for a jury to question the employer's credibility.  *E.E.O.C. v. Sears Roebuck & Co.,* 243 F.3d 846, 852-54 (4th Cir. 2001).  Once credibility is damaged, the jury can infer improper motivations on the part of the employer. *Cleveland v. Home Shopping Network, Inc.,*  369 F.3d 1189, 1194-95 (11th Cir. 2004).

In the instant case, no mention is made of any problems with the Plaintiff's performance until Defendant's Motion for Summary Judgment.  Before that time, the Defendant (1) had found the Plaintiff physically able to perform his job duties[14], (2) had rated the Plaintiff as a satisfactory employee for the work year 2005, (3) had given the Plaintiff a raise, (4) had rated Plaintiff eligible for rehire and had given him

---

[14]April and October 2005 physicals.

the highest marks attainable in the following areas:    attendance, attitude, job knowledge, quality of work, production rate, and ability to get along with fellow workers, (5) had informed the Plaintiff that he was being laid-off because of a company reorganization and a desire to cut expenses, (6) gave this same rationale for Plaintiff's lay-off to the EEOC;   (7) gave reorganization of company and reduction in force as the reason for Plaintiff's separation to the State of Alabama; and (8) testified, under oath, in response to an interrogatory regarding whether Plaintiff was qualified to work in Casting/Alloy, that "[a]s far as Defendant knows, Plaintiff was physically able to perform his job duties."

In its brief, Defendant gives a totally different assessment of the Plaintiff's abilities and work record by citing to numerous write-ups in Plaintiff's personnel file.[15]   However, Plaintiff was last written up in May 2005, approximately seven months before his lay-off.   Moreover, Plaintiff was never terminated despite being "written up" numerous times.   On the other hand, Defendant has fired and rehired younger employees with disciplinary problems.   For example, the following employees were fired for various rules infractions and rehired:

---

[15]It should be noted that the Defendant has refused to turn over the personnel files of possible comparators to the Plaintiff.  The Defendant's recalcitrance on this point is the subject of a Motion to Compel, which was granted by this Court on July 2, 2007.

| Employee | D.O.B. | D.O.T. | D.O.R.[16] |
|---|---|---|---|
| Ed Meadows | 11/26/1981 | 01/05/2006 | 03/2006 |
| Nicholas O. Williams | 06/24/1985 | 09/2005 | 06/12/2006 |
| Randolph E. Harley | 11/03/1986 | 11/2005 | 04/27/2006 |
| Robert E. Brundidge, Jr. | 04/27/1977 | Unknown | 05/05/2006 |
| Bobby T. Streeter | 01/12/1979 | 02/1999 | 03/2000 |
| Timothy Rayborn | 09/04/1978 | 02/2004 | 08/14/2006 |
| Anthony L. Duncan | 01/11/1971 | 11/2006 | 03/13/2006[17] |

Defendant's assertion that the Plaintiff was not qualified is undercut by its own admissions and its own documents, thus for these reasons alone summary judgment is inappropriate.

---

[16]D.O.B., D.O.T., and D.O.R. refer to date of birth, date of termination and date of rehire, respectively.

[17]Plaintiff was able to glean the following from the applications given to him by Defendant in response to his request for production of documents: Williams was terminated for missing too many days, Harley was terminated for smoking, Brundidge's reason for termination are unknown, Streeter was terminated on at least two occasions for reasons unknown, Rayborn was terminated for reasons unknown and Duncan was terminated for unknown reasons. As mentioned above, the Court has granted the Plaintiff's Motion to Compel production of the personnel files of these individuals and others which may show additional evidence of individuals with less than stellar work records who were terminated and then rehired.(Pl.'s Ex. 20, Applications).

## 2.    The Defendant Continued to Hire Substantially Younger Employees

Defendant characterizes the employees it hired instead of the Plaintiff as "replacement employees for the employees who had left the company after the work force reduction." (*See,* Def. Br. at 14-15).  However, the sentence preceding this one in the Defendant's brief states that, [t]here is no evidence that infers that Sanders Lead was looking for replacement employees for the workers that were discharged during the work force reduction." (*See,* Def. Br. at 14).  Defendant argues that there is distinction between employees "discharged" during the work force reduction and employees who had left the company after the work force reduction and that because the Plaintiff was "discharged", presumably for performance reasons, he is not eligible for rehire.  Defendant's argument, however, is destroyed by its own documentation and statements made before the Plaintiff filed the instant lawsuit which clearly show that it classified the Plaintiff as an employee affected by a company reorganization and work force reduction.  Thus, the Plaintiff was not a "discharged" employee ineligible for rehire, but, instead was an employee who had left the company after the work force reduction.  The Defendant submitted documents plainly stating this fact to the Plaintiff, the EEOC and the State of Alabama.   Therefore, the Plaintiff was eligible for rehire and the Defendant should have considered his application.

Furthermore, as mentioned in *Sections II(B)* of this brief, the Defendant hired

22

at least ten significantly younger employees while rejecting the Plaintiff's application. Tellingly, after rejecting the Plaintiff's application, the Defendant continued to advertise for applicants for the Casting/Alloy Department by running advertisements in at least three newspapers in the region. Thus, it must be held that the Defendant's argument that the Plaintiff was not replaced by someone outside the protected group is incredible and summary judgment is inappropriate.

### D.    Plaintiff's Establishes a Claim of Retaliation

To establish a prima facie case of retaliation the Plaintiff must show that he (1) engaged in statutorily protected conduct; (2) suffered an adverse employment action; and (3), the adverse action was causally related to the protected expression." *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999).   In its brief, the Defendant concedes that the Plaintiff engaged in protected conduct by filing a charge of discrimination with the EEOC and that he suffered an adverse employment action by being denied employment a second time.   (*See,* Def. Br. at 15-16). Defendant only contests the causative element of the Plaintiff's *prima facie* case on the basis that (1) it was not hiring at the time the Plaintiff applied and (2) even if it were hiring Plaintiff's past work performance would have precluded his selection.

1.    **Plaintiff Establishes a Causal Link Between the Protected Activity and the Adverse Employment Action**

The Eleventh Circuit has repeatedly interpreted the "causal link requirement" broadly.  *See, Meeks v. Computer Assocs. Int'l.,* 15 F.3d 1013, 1021 (11th Cir. 1994)*; EEOC v. Reichhold Chem., Inc.,* 988 F.2d 1564, 1571-72 (11th Cir. 1993).  In *Meeks* and *Reichhold,* the Court stated that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."  *Meeks,* 15 F.3d at 1021 (emphasis added); *Reichhold,* 988 F.2d at 1571-72.  The Eleventh Circuit has further stated that:

> The causal link in the [retaliatory discharge] formula [is not] the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action.  . . . Rather, we construe the "causal link" element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated.  At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action.  (internal cites omitted).

*Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 920 (11th Cir. 1993).

The undisputed evidence shows that the Matthew D. Alexander, Kenyata Gilbert, Jerrell T. Jackson, Terrance T. Pennington, Felix J. Solomon, Mitchell T. Truitt, and Nicholas O. Williams were all hired within two to twenty-eight days of the Plaintiff's second application.  Moreover, the average age of these applicants a

that time was twenty-four and one-half years (24.5).  Furthermore, Kenyata Gilbert, who was nineteen-years old at the time, was hired just two days after the Plaintiff submitted his second application.  Thus, Defendant's allegation that it was not hiring is simply not true, especially since it continued hiring individuals before and after it knew of the Plaintiff's interest.  (Id.).  With regard to the allegation that Plaintiff's past work performance was a bar to re-employment, as mentioned above there are numerous disputed facts and inconsistencies regarding his work history and performance which preclude summary judgment.  Clearly, it must be held that Plaintiff has made out a *prima facie* case of retaliation.

### 2.    Pretext

Once a prima facie case has been established, the Defendant must proffer a legitimate non-discriminatory reason for the adverse employment action.  *Farley v. Nationwide Mutual Ins. Co.,* 197 F.3d 1322, 1336 (11th Cir. 1999).  Defendant's legitimate non-discriminatory reasons for not re-hiring the Plaintiff are the same as the reasons it has put forth to rebut Plaintiff's *prima facie* case.  Plaintiff will not rehash his prior arguments, but will say that Defendant's reasons are equally unavailing in this portion of the analysis.  Therefore, it must be held that Defendant's refusal to rehire the Plaintiff is nothing more than a pretext for impermissible discrimination and for these reasons summary judgment is due to be denied.

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, the Defendant is not entitled to Summary Judgment and its motion should be denied in its entirety.

Respectfully submitted,

/s/Roderick T. Cooks
Attorney for the Plaintiff

<u>OF COUNSEL</u>:
WINSTON COOKS, LLC
The Penick Building
319-17th Street North
Birmingham, AL 35203
Tel: (205)502-0970
Fax: (205)251-0231
email: rcooks@winstoncooks.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document on all persons listed below by CMF/Electronic Mail and/or U. S. Mail, postage prepaid and addressed to them as follows:

Matthew M. Baker, Esq.
Cervera, Ralph & Reeves, LLC
P.O. Box 325
914 South Brundidge Street
Troy, Alabama 36081
(334) 566-0116

Done this the 2nd day of July, 2007.

s/Roderick T. Cooks
Of Counsel